UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ENVIRONMENTAL 360, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:22-cv-00606 |
| | ) |
| CLINTON WALKER | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In an age where remote work has become increasingly common, this case presents a prescient question: does this Court have specific personal jurisdiction over an employee who accepts employment with a Tennessee corporation, remotely works for that corporation for several years, and then harms that corporation by allegedly violating the non-compete provision of his employment agreement? The Plaintiff, Environmental 360, Inc. ("E360") brings this case against Defendant, Clinton Walker ("Walker"), to enforce the terms of his non-compete agreement with E360. For the reasons that follow, the Court finds that Walker cannot escape this Court's jurisdiction simply because he resides out-of-state.

Pending before the Court is Walker's motion to dismiss for lack of personal jurisdiction. (Doc. No. 41). E360 responded to the motion (Doc. No. 43), and Walker replied. (Doc. No. 44). On January 12, 2024, Walker filed a Motion to Ascertain Status of his motion to dismiss. (Doc. No. 45). The motions are ripe for review. The Court will deny Walker's motion to dismiss and will deny Walker's "Motion to Ascertain Status" as moot.

1

## BACKGROUND

The following allegations are taken from the Amended Complaint and its two exhibits (Doc. Nos. 14, 14-1, and 14-2) as well as the exhibits to Walker's motion and E360's response (Doc. Nos. 41-1, 41-2, 41-3, 41-4, 41-5, 43-1, and 43-2). On a motion to dismiss for lack of personal jurisdiction, the Court may consider affidavits, discovery, or other evidence. Anwar v. Dow Chemical Co., 876 F.3d 841, 847 (6th Cir. 2017). "In our review of a plaintiff's prima facie case, we consider pleadings and affidavits in a light most favorable to the plaintiff, without weighing the controverting assertions of the party seeking dismissal." Id. (quoting Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)) (internal quotations omitted).

E360 is a Tennessee corporation headquartered in Murfreesboro, Tennessee with only one office location, also in Murfreesboro. (Doc. No. 14 ¶¶ 1, 36(a)). Walker entered into an employment agreement with E360 in May 2015. (Id. ¶¶ 11). Around the same date, he signed an Agreement of Non-Compete and Non-Disclosure, ("Non-Compete Agreement") promising that "[i]f [his] employment with the Company terminates for any reason, [he] shall not, for a period of one year from the date of termination, have any business dealings whatsoever . . . with any customer or client of Company." (Id. ¶ 12; Doc. No. 14-1 § 11). He also promised not to disclose any confidential information of E360 at any time, (id. § 4), and for a period of one year after his termination, not to "engage, directly or indirectly, or through any corporations or associates in any business, enterprise, or employment with any of those clients doing business with Company prior to the employment of [Walker] or during the time of employment." (Id. § 6). The Non-Compete Agreement contains a choice of law provision stating that "[t]he Agreement shall be construed in accordance with the laws of the State of Tennessee." (Id. § 12). It does not contain a forum selection clause. (See generally id.).

Walker was employed by E360 for approximately seven years. During that time, he worked remotely, apparently from Florida. (See Doc. No. 14 ¶ 2). On at least 12 occasions totaling 29 days, Walker travelled to Tennessee for company meetings, trainings, and informal visits. (Doc. No. 41-1, Response to Interrogatory 1).

Walker resigned from his position at E360 on May 30, 2022. (Doc. No. 14 ¶ 21). E360 alleges that following his resignation, Walker reached out to and performed work for current clients of E360, began working for a competitor of E360 less than one month following his resignation, and solicited at least two E360 employees to join him at this competitor. (See id. ¶¶ 22-35). E360 further alleges that each of these activities violated Walker's Non-Compete Agreement and that it was injured as a result. (Id. ¶¶ 41, 46, 51-54).

## DISCUSSION

Walker argues that this Court does not have personal jurisdiction over him, and E360's Complaint must be dismissed. (See generally Doc. Nos. 41-42). "When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." Sullivan, 79 F.4th at 660.[1] Tennessee's long-arm statute provides that nonresidents of Tennessee are subject to jurisdiction in Tennessee on "[a]ny basis not inconsistent with the constitution of [Tennessee] or of the United States," as well as for other specifically delineated reasons. Tenn. Stat. Ann. § 20-2-214. Tennessee's Supreme Court

---

[1] Here, the Non-Compete Agreement between E360 and Walker contains a provision stating that "[t]he Agreement shall be construed in accordance with the laws of the State of Tennessee." (Doc. No. 14-1 § 12). Ordinarily, the Court would need to determine whether the choice of law provision is enforceable under Tennessee law, Wallace Hardware Co. v. Abrams, 223, F.3d 382, 391 (6th Cir. 2000), but since the Non-Compete Agreement applies the same state law as this Court's forum, the Court need not determine whether that provision is valid under Tennessee law. Regardless of whether the Court applies the law of the state in this Court's forum or the choice of law provision of the parties' non-compete agreement, Tennessee law applies.

recognizes that the "long-arm statutes expand the jurisdictional reach of Tennessee courts as far as constitutionally permissible." Crouch Railway Consulting, LLC v. LS Energy Fabrication, LLC, 610 S.W.3d 460, 471 (Tenn. 2020) (quoting First Community Bank, N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369, 384 (Tenn. 2015)). "Tennessee's appellate courts typically apply the minimum contacts test of International Shoe, as elaborated by World–Wide Volkswagen and Burger King . . ." State v. NV Sumatra Tobacco Trading Co., 403 S.W.3d 726, 754-55 (Tenn. 2013). "Where a state's long-arm statute extends to the limits of the Due Process Clause, the two inquiries merge, and the court need only determine whether exercising personal jurisdiction violates Conner's due process rights." Pearl Records, Inc. v. Connor, 2023 WL 351203, at *3 (M.D. Tenn. Jan. 20, 2023).

### A. Personal Jurisdiction Due Process Standard

The Due Process Clause requires that Walker have sufficient minimum contacts with Tennessee so that the Court's exercise of personal jurisdiction over him does not offend traditional notions of fair play and substantial justice. See Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012). See also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The Court must have general or specific personal jurisdiction over a defendant. Sullivan, 79 F.4th at 660. In this case, general personal jurisdiction, which requires a "defendant's affiliations with a forum state are so continuous and systematic as to render it essentially at home there," Crouch, 610 S.W.3d at 472 n.11, does not apply.[2]

---

[2] Walker's motion argues that general personal jurisdiction does not apply here. (See Doc. No. 42 at 8-9). In response, E360 makes the conclusory statement that Walker "has made a *prima facie* case that this court has *in personam* jurisdiction over [Walker] under both the general and specific jurisdiction standards of proof." (Doc. No. 43 at 12). Despite making this assertion, E360's entire argument concerns the specific personal jurisdiction standard. The Court finds that E360 has not

4

For a court to have specific jurisdiction, a plaintiff must plead specific facts sufficient to satisfy the three-part test established in Southern Mach. Co. v. Mohasco Industries, Inc.:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968).

As the Sixth Circuit recently explained:

> Dismissal for lack of personal jurisdiction under Rule 12(b)(2) involves burden shifting: after the plaintiff makes a prima facie case for personal jurisdiction, which can be done merely through the complaint, the burden shifts to the defendant. When the burden shifts to the defendant, its motion to dismiss must be supported by evidence. The burden then returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

Sullivan v. LG Chem, Ltd., 79 F.4th 651, 660 (6th Cir. 2023) (quoting Peters Broad. Eng'g, Inc. v. 24 Cap., LLC, 40 F.4th 432, 437 (6th Cir. 2022)) (internal quotations and citations omitted).

### B. Application to this Case

There is no dispute that E360 has personal jurisdiction in Tennessee. It is a Tennessee corporation and its headquarters and only corporate office is located in Murfreesboro, Tennessee. (Doc. No. 14 ¶ 1). The question is whether Walker, a former employee of E360 who resides in Florida, has "sufficient minimum contacts with Tennessee related to this action" that are "purposeful and substantial enough to merit the exercise of personal jurisdiction." Crouch, 610 S.W.3d at 477. If minimum contacts exist, the Court may consider "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." Burger King Corp. v.

---

adequately disputed Walker's argument that the Court does not have general personal jurisdiction over him.

Rudzewicz, 471 U.S. 462, 476 (1985). For the reasons below, the Court finds ample evidence that it has specific personal jurisdiction over Walker.

1. **Minimum Contacts with Tennessee**

The initial burden of establishing a defendant's contacts with the forum is on the plaintiff and can be met through allegations in the Complaint. Sullivan, 79 F.4th at 660. Here, the Amended Complaint establishes that Walker worked remotely for E360 and makes detailed allegations concerning Walker's contacts in Tennessee, including:

- Walker "engaged in a continuous long-term employment" with E360, which is a Tennessee-based company with only one office, which is located in Murfreesboro. (Doc. No. 14 ¶ 36(a)).
- Walker "routinely traveled to Tennessee for work-related activities" on at least 13 occasions. (Id. ¶ 36(c)).
- Walker "would routinely attend [E360's] annual company meetings in the State of Tennessee." (Id. ¶ 36(d)).
- Walker's "business activities . . . consistently routed through and involved communication with [E360's] central office in Murfreesboro, Tennessee." (Id. ¶ 36(e)).
- Walker's business cards and email signature "listed [E360's] Murfreesboro, Tennessee address as [his] place of business." (Id. ¶ 36(e)-(f)).
- Walker's "pay stubs were all issued from [E360's] Murfreesboro, Tennessee, location." (Id. ¶ 36(g)).
- "The equipment that [Walker] managed for [E360] was based in Murfreesboro, Rutherford County, Tennessee." (Id. ¶ 36(j)).
- Walker "carried out meetings from Tennessee when [E360's] staff was convened, including for training led by [Walker] physically in Tennessee." (Id. ¶ 36(m)).
- Walker "solicited a Tennessee employee of [E360] in an apparent effort to further his efforts to divert work from [E360's] clients." (Id. ¶ 36(n)).
- Walker's "conduct has harmed [E360] which is a Tennessee company." (Id. ¶ 36(o)).

(See also Doc. No. 14 ¶¶ 5, 36).

After E360's alleged this Court's personal jurisdiction over Walker, the burden shifted to Walker to provide evidence that the Court does not have personal jurisdiction. Sullivan, 79 F.4th at 660. Walker's evidence includes: (1) he was solicited to work for E360 while he was living in Florida (Doc. No. 41-3 ¶ 2); (2) he signed his employment agreement with E360 in Florida (id. ¶ 3); he sent his resignation email from Missouri (id. ¶ 4); and (4) of the companies he allegedly contacted in violation of his Non-Compete Agreement, Walker did not speak to the Tennessee locations of those companies or contact them from Tennessee (id. ¶¶ 5-8). Walker also appears to dispute a handful of the work trips the Amended Complaint alleges that he made to Tennessee, though he admits to making at least 12 trips, some of which are in addition to those listed in the Complaint. (Compare Doc. No. 41-1, Response to Interrogatory 1 and Doc. No. 14 ¶ 36(c)). He also contends that he does not know from where his paychecks were issued and does not know that E360's only office is located in Tennessee. (See Doc. No. 41-1, Responses to Requests for Admissions 1 and 4). Curiously, Walker does not state or provide any support concerning where he actually lived during the course of his employment, aside from his contentions about where he was located when he signed his employment agreement and sent his resignation email. (See generally Doc. Nos. 41-3, 41-4, and 43-2).

Neither party has cited, and the Court has not found, any Tennessee court or Sixth Circuit decision concerning the personal jurisdiction of out-of-state former employees alleged to have violated non-compete agreements. (See generally Doc. Nos. 42, 43). However, the Court finds the Tennessee Supreme Court's analysis of personal jurisdiction in cases concerning contract claims to be instructive and analogous to this case. See Crouch, 610 S.W.3d at 474-77.

Crouch involved a contract for services between a Brentwood, Tennessee civil engineering firm, Crouch, and a Texas oil-drilling company, Lonestar. During the course of the six-week

7

Case 3:22-cv-00606   Document 46   Filed 01/29/24   Page 7 of 15 PageID #: 317

contract, "Lonestar emailed the executed contract to Crouch in Tennessee," id. at 478, and then "continued to communicate with Crouch in Tennessee by telephone and email during the course of the contractual relationship," id. See also id. at 479. The Tennessee Supreme Court determined that the lower Tennessee court had personal jurisdiction over Lonestar because "Lonestar elected to enter into a contract with Crouch, knowing that Crouch was a Tennessee company," though it "certainly could have declined to do business with" Crouch. Id.

Like Lonestar, Walker "[him]self chose the path that led to [his] Tennessee contacts," and, like the Tennessee Supreme Court, this Court "find[s] nothing random, fortuitous, or attenuated about the contacts." Id. Furthermore, "the notion that a defendant . . . may be subject to personal jurisdiction without physically having entered the forum is by now an unexceptional proposition." Crouch, 610 S.W.3d at 478 (quoting J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 882 (2011)) (internal quotation omitted). Here, far from having no physical contact with the forum, Walker made repeated trips to Tennessee and maintained lines of communication with his employer in Tennessee over the course of seven years. Because of his seven-year employment with a Tennessee company; repeated travel to Tennessee during the course of that employment; communications with E360 employees in Tennessee through phone and email, including transmission of his employment agreement and resignation letter; and the Tennessee choice of law provision in the non-compete agreement he signed, Walker "should reasonably anticipate being haled into a Tennessee court." Id. at 478.

In addition to Crouch, the Court agrees with E360 that AlixPartners, LLP v. Brewington draws several parallels to this case. (See Doc. No. 43 at 10 (quoting AlixPartners, LLP v. Brewington, 836 F.3d 543, 551 (6th Cir. 2016.)). There, the Sixth Circuit held that the following contacts met "the required prima facie showing" of personal jurisdiction:

8

> [Brewington] (1) pursu[ed] employment through email and telephone communications with personnel in Alix's Michigan office; (2) sign[ed] an employment agreement with a Michigan choice-of-law provision and returning it to Alix's Michigan office; (3) attend[ed] a mandatory orientation session in Michigan; (4) communicat[ed] with his Michigan-based supervisors over the course of his employment; and (5) recruit[ed] Michigan candidates for a position in Alix's Michigan office.

Id.

Walker's arguments to the contrary are unavailing. He asserts that the Court cannot have personal jurisdiction over him because "[t]he Amended Complaint does not allege . . . (1) whether Defendant sought employment from Plaintiff or whether Plaintiff recruited Defendant in Florida, (2) where or how the interview process occurred, (3) where the employment agreements were negotiated or executed, or (4) where Defendant performed work for Plaintiff." (Doc. No. 42 at 11). Regardless of where Walker was located on the day he signed his employment agreement and on the day he resigned, for the seven years in between those bookends, Walker engaged in consistent communications with E360's Murfreesboro office, held out that office as his employment address in his email signature and business cards, and travelled to that office on several occasions. (See Doc. No. 14 ¶ 36; Doc. No. 41-1, Response to Interrogatory 1; id., Response to Request for Admission 7). At bottom, Walker chose to accept employment with a Tennessee-based company that he "certainly could have declined to do business with." Crouch, 610 S.W.3d at 478.

Walker also argues that E360 has not alleged that he violated the non-compete agreement by soliciting the Tennessee locations of E360's clients. (Doc. No. 42 at 3-5). In doing so, Walker appears to argue that his actions giving rise to E360's claims occurred outside of Tennessee. (See id.). The Court does not find this argument remotely persuasive on whether this Court has specific jurisdiction over Walker. Walker signed a Non-Compete Agreement with his Tennessee employer, consistently routed his business through the Tennessee office, held himself out as a

9

Tennessee employee on his business cards and in his email signature, and agreed that any purported violations of his Non-Compete Agreement would apply Tennessee law. "[C]ovenants not to compete, solicit, or disclose confidential information are part and parcel of the terms of employment, regardless of the fact that some of those obligations may not be triggered until employment has ended." Deep South Communications, 652 F. Supp. 3d at 656. E360's cause of action arose from Walker's employment with E360. See id; Direct Biologics, 2022 WL 1409984, at *7; Belimed, 2022 WL 939819, at *5; W. Capra Consulting Group, 2019 WL 3935045, at *6; FBR Capital Markets, 2009 WL 3254458, at *3.

The cases Walker cites in support of his argument are not persuasive. As an initial matter, not one of these cases is binding precedent in this Court, and none are even within the district of the Sixth Circuit. Even more importantly, the cases are either dissimilar to the facts of this case or contradict Tennessee precedent.

In Vapotherm, Inc. v. Santiago, the defendant was a former employee of a company with its principal place of business in New Hampshire. 38 F.4th 252, 255 (1st Cir. 2022). Unlike E360, however, New Hampshire was not Vapotherm's only place of business. In fact, the defendant, an account manager, was "specifically assigned to the territory within the State of Georgia," where he lived. Id. His only communications with Vapotherm's New Hampshire office were monthly contacts with a customer service representative and infrequent communications with information technology and human resources personnel. Id. at 256. Here, E360 alleges Walker's "business activities in connection with his employment consistently routed through and involved communication with [E360's] central office in Murfreesboro, Tennessee." (Doc. No. 14 ¶ 36(e)). Vapotherm is simply not comparable to this case.

10

In Rushmore Inv. Advisors, Inc. v. Frey, a Texas Court of Appeals upheld a trial court's determination that it did not have personal jurisdiction over a former employee of a Texas company who had worked remotely from Pennsylvania. 231 S.W.3d 524, 526-27 (Tex. App. Ct. 2007). The court rejected Rushmore's argument that Frey's 22 months of employment with its Texas-based company, numerous visits to the Texas office, contact with 23 Texas-based clients, business cards indicating the Texas company address, and employment agreement with a Texas choice of law provision was sufficient to establish personal jurisdiction. Id. at 527, 529-30. Instead, it found that because Frey was offered employment in Pennsylvania, was not assigned and did not receive commissions from any Texas clients, and her employment agreement did not contain a Texas venue provision, she did not purposefully avail herself of a Texas court's jurisdiction. Id. at 530. The Court finds tension between the Texas court's reasoning and the Tennessee Supreme Court's reasoning in Crouch, which found that the choice to do business with a Tennessee company supported a finding of specific personal jurisdiction. See Crouch, 610 S.W.3d at 479. The Court does not find Rushmore controlling.

Walker also relies upon two cases out of the Southern District of Indiana to argue that a defendant's "human resources connections with the forum state are insufficient to establish personal jurisdiction." (Doc. No. 42 at 13 (quoting and citing Commissioning Agents, Inc. v. Long, 143 F. Supp. 3d 775, 788-89 (S.D. Ind. 2015); Protective Insurance Co. v. Cody, 882 F. Supp. 782, 786-87 (S.D. Ind. 1995)). In Long, the court acknowledged that normally, "a defendant-employee's human resources connections with the forum state are insufficient to establish personal jurisdiction," 143 F. Supp. 3d at 788, but the court also held that "when a defendant-employee's communications . . . are used to effectuate a scheme to defraud the plaintiff-employer, those contacts are sufficient to establish personal jurisdiction." Id. The court ultimately

found that it had specific personal jurisdiction over the defendant.  Id.  Here, like the defendant in Long, Walker's alleged intentional violations of the Non-Compete Agreement harmed E360 in Tennessee.   In Cody, the only contacts the defendants had with Indiana were their employment agreements with an out-of-state agent of an Indiana company, their submission and receipts of tax forms and paychecks, and their acceptance of workers compensation benefits from the Indiana company.  Cody, 882 F. Supp. at 785.  Here, E360's allegation that Walker received his checks from E360's Tennessee office is one of fifteen allegations demonstrating his contacts with Tennessee.  (See Doc. No. 14 36).  Had E360's allegations concerning Walker been limited to those alleged in Cody, they may not have been sufficient to establish minimum contacts.  But the Court will not ignore all of Walker's contacts with Tennessee to evaluate its jurisdiction.

Finally, Walker argues that Tennessee's long-arm statutes do not provide a basis for personal jurisdiction.  As discussed above, Tennessee courts extend personal jurisdiction to the scope of federal Due Process.  First Community Bank, 489 S.W.3d at 384.  In fact, as Walker quotes in his motion, the long-arm statute explicitly conveys jurisdiction on "[a]ny basis that is not inconsistent with the constitution of this state or of the United States."  Tenn. Code Ann. § 20-2-214(a)(6).

After reviewing the totality of E360's jurisdictional allegations and Walker's unpersuasive evidence disputing jurisdiction, the Court finds that Walker could reasonably expect to be sued in this forum concerning his Non-Compete Agreement with his former Tennessee employer.

### 2. Cause of Action Arose in Tennessee

A recent case out of the United States District Court for the District of Louisiana compiled cases from other circuits ruling on the exact issue of Walker's motion—whether an out-of-state former employee is subject to jurisdiction in his former employer's forum when he allegedly

12

violates a non-compete agreement. See Deep South Communications, LLC v. Fellegy, 652 F. Supp. 3d 636, 654-56 (M.D. La. 2023). In each of these cases, the courts found that the former employee should reasonably expect to be sued in the district where his or her former employer was located. Importantly, each of these decisions reasoned that when a former employee violates a non-compete agreement, the cause of action arises in the forum of his former employer because that is where the injury occurs. See id. at 656 (concluding that the plaintiff's "breach of [the non-compete] contract claim more broadly concerns the terms of [the defendant's] employment . . . . [and] find[ing] that said claim arises out of or relates to Defendant's contacts with Louisiana"); Direct Biologics, LLC v. McQueen, 2022 WL 1409984, at *7 (W.D. Tex. May 4, 2022) (holding that the defendant "breached his employment contracts with his Texas-based employer, and these breaches . . . caused injury to [the plaintiff] in Texas"); Belimed, Inc. v. Bleecker, 2022 WL 939819, at *5 (D.S.C. Mar. 29, 2022) (holding that "[t]his action, at its core, concerns the terms of [defendant's] employment with a South Carolina-based company and, therefore, arises out of [his] connections with South Carolina"); W. Capra Consulting Group, Inc. v. Snyder, 2019 WL 3935045, at *6 (N.D. Ill. Aug. 20, 2019) (holding that "as [defendant's] contacts with Illinois arise out of the employment agreement that lies at the heart of [plaintiff's] claim, [plaintiff] has established that its injury arises out of or relates to [defendant's] contacts"); FBR Capital Markets & Co. v. Short, 2009 WL 3254458, at *3 (E.D. Va. Oct. 9, 2009) (holding that "any injury that may have been caused by [defendant's] departure from [the company] would be felt by the company in Virginia"). The Court agrees with the decisions of these courts and finds that, like those cases, the cause of action arose in and E360's alleged injury was suffered in Tennessee.

### 3. Fairness and Reasonableness of Asserting Jurisdiction

Having found that Walker has established sufficient contacts with Tennessee and that the cause of action arose here, the Court must now determine whether exercising jurisdiction would be unreasonable or unfair. Crouch, 610 S.W.3d at 485. Tennessee courts looks to five factors to make this determination: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." Id. (citing State v. NV Sumatra Tobacco Trading Co., 403 S.W.3d 726, 752 (Tenn. 2013)). When the minimum contacts are satisfied and the claim arose from the defendant's forum state activities, "there is an inference of reasonableness and only the unusual case will not meet this third criteria." MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 903 (6th Cir. 2017) (quoting Air Prods. & Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 554 (6th Cir. 2007)) (internal quotations omitted).

Walker makes two arguments that jurisdiction is unreasonable in this case. His first argument simply restates that Walker did not purposefully avail himself in Tennessee and E360's claims do not arise out of his contacts with Tennessee. (Doc. No. 42 at 17). The Court has already addressed and dismissed these arguments. Walker's second argument is that because he lives in Florida, "[r]equiring [him] to incur substantial costs to litigate this matter in Tennessee, a state to which he has no connection, is unreasonable." Id. Walker provides no support for why the sole fact that he lives in Florida is enough to overcome the presumption that Tennessee is a reasonable forum to litigate this case. (Id.). Moreover, the Sixth Circuit has upheld the exercise of jurisdiction where the burden on the defendant was much greater. See, e.g., Fortis Corporate Ins. v. Viken Ship Management, 450 F.3d 214, 223 (6th Cir. 2006) (exercising personal jurisdiction over

Norwegian defendants, where there was "an ability to conduct discovery with little difficulty across borders" and the relevant witnesses spoke English).

Because Walker only makes arguments concerning one of the five reasonableness prongs and there is a presumption that jurisdiction in this forum is reasonable, the Court need not address the remaining four prongs. The Court finds that its exercise of jurisdiction in this case "comport[s] with fair play and substantial justice." Burger King, 471 U.S. at 476.

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE